ALEXANDER WESTREICH and HELENE WESTREICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Westreich v. Commissioner
Docket No. 4043-74.
United States Tax Court
T.C. Memo 1977-384; 1977 Tax Ct. Memo LEXIS 56; 36 T.C.M. (CCH) 1563; T.C.M. (RIA) 770384; November 3, 1977, Filed John E. McDermott, Jr., for the petitioners. William K. Carr, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Taxable year
Deficiency
1970
$ 5,010.34
1971
18,641.95
1972
5,565.08
The issue remaining for decision is whether petitioner may exclude from her gross income for the taxable years 1970, 1971 and 1972, inclusive, under section 71(b), [1] the payments she received from her former husband in the respective amounts of $14,500.00, *57 $41,903.00 and $13,000.00. The facts have been fully stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners Alexander Westreich and Helene Westreich resided in New York, New York. Their Federal income tax returns for the calendar years 1970, 1971 and 1972 were prepared on the cash receipts and disbursements method of accounting. The 1970 and 1971 returns were filed with the District Director of Internal Revenue, Andover, Massachusetts. The 1972 return was filed with the District Director of Internal Revenue, Holtsville, Long Island, New York. Petitioner Helene Westreich, hereinafter sometimes referred to as petitioner, was married to Bertram Cohen from 1948 to 1965. Three children were born of that marriage. In 1965, petitioner and her then husband were residents of the State of New Jersey. On April 24, 1965, petitioner's former husband, Bertram Cohen, entered into an agreement providing for their separation and disposition of *58 their marital rights and obligations of their marriage. Under the terms of the separation agreement, petitioner retained custody of the three children. The agreement also provided, in part, as follows: 5. (A) The Husband will pay to the wife for support of herself and the children the sum of $37,000.00 per annum which shall be payable weekly on Friday of each week consecutively commencing on the first Friday following the date of execution of this Agreement. Each weekly installment shall be in the sum of $711.50. For convenience, the sums payable under this Section sometimes called "Alimony" are referred to in this Agreement as "Periodic Weekly (Payments)." (B) The foregoing sums shall be in payment and satisfaction of all costs, charges and expenses required for the maintenance of the Wife and children, of any nature and description except as modified in Section 6. 6. The foregoing Periodic Weekly Payments shall be subject to upward and downward adjustments in the events hereinafter described: (A) Should the children, or any of them, attend a school of secondary education which requires his (her) residence in such educational establishment or a college or institution *59 of higher learning, the Husband shall, at the time of the child's matriculation, pay the tuition, registration and entrance fees in addition to the foregoing Periodic Weekly Payments. This obligation shall not terminate upon child's majority. All other costs and expenses for the child's maintenance in such educational institution shall be paid by the Wife out of the foregoing Periodic Weekly Payments. (B) Upon the emancipation of a child or his (her) pursuit of gainful employment or death or when he (she) shall attain the age of 21 years, whichever event occurs sooner, the Periodic Weekly Payments shall be reduced, for each such child, by $125.00, effective upon the occurrence of the event and thereafter. * * *
(D) In the event the parties shall be divorced and the Wife shall remarry or participate in a meretricious relationship, each Periodic Weekly Payment to be made under Section 5 shall be reduced by $336.50, effective upon the occurrence of such event and thereafter. In the event of the death of the Husband or Wife, all obligations of the Husband to the Wife under this Agreement shall cease and terminate forthwith, save only the rights of the Wife under Section 7 *60 and for any arrears under Sections 5 and 6 of this Agreement. (E) In modification of Paragraph (B) of this Section, it is agreed that in the event any child shall cease permanently to live with the Wife in her residence, the Periodic Weekly Payments provided for in Section 5 shall, as to each such child, be reduced by $125.00, effective upon the occurrence of the event and during such separation. However, this reduction shall not apply to absence of a child from the Wife's residence while at a school of secondary education or at college, camp, during vacation periods, or while in the custody of the Husband. On August 13, 1965, petitioner received a Decree of Divorce from the Eighth Judicial District Court, Clark County, Nevada, which awarded her custody of and further ratified, confirmed, approved and incorporated by reference the separation agreement. After obtaining the decree, petitioner returned to her residence in New Jersey, where she continued to reside with her three children. In October 1965, petitioner petitioned the Superior Court of the State of New Jersey, Bergen County, for an order modifying the agreement in certain respects. On January 12, 1966, the court *61 ordered that "the support agreement of the parties executed on April 24, 1965, be and is hereby confirmed, ratified and approved" (subject to certain amendments agreed to by the parties and not germane to the present action). Petitioner received payments in accordance with the terms of the agreement through September 1, 1967. Alexander Westreich and petitioner were married on September 17, 1967, and moved to New York City, where Mr. Westreich resided and maintained his business. On or about September 8, 1967, petitioner's former husband ceased making payments to petitioner and made no further payments until June of 1970. As a result of the failure of petitioner's former husband to make any payments, petitioner petitioned the Superior Court of the State of New Jersey, Bergen County, for an order finding, among other things, Bertram Cohen in contempt of the Court's previous order of January 12, 1966, with respect to making payments. A hearing regarding this motion and certain cross motions was held before the Superior Court of the State of New Jersey, Bergen County. An oral decision was entered on March 17, 1970, which found, in part: * * * that the arrearages due Mrs. Westreich *62 after giving a credit of $548 for William and a credit of $3,575.52 for Gail, totalling $4,123.52 would leave a balance due Mrs. Westreich of $39,626.98 through January 23, 1970. Now, on these arrearages there seems to be no question that all of the payments made by Mr. Cohen were for the direct benefit of the children. I have no quarrel with that. However, I must keep in mind that Mrs. Westreich under the existing orders of the court has the custody of these three infants. This calls for support payments to be made directly to her. To allow otherwise would be to dissipate custody. Certain additional motions were made by the parties with respect to the March 17, 1970, decision. The March 17, 1970, order was modified by supplemental orders of May 27, 1970, and June 17, 1970. The June 17, 1970, order ordered, in part, that: * * * Bertram I. Cohen, is in default in the payment of partial support for the plaintiff until the date of her remarriage, September 17, 1967, and for support of the three infant children of the marriage in the aggregate amount of $43,202.50 which said sum is fixed as the total amount of said arrearage due by the defendant to the plaintiff as of January 23, 1970. *63 * * * Thereafter, Bertram I. Cohen applied to the Superior Court of the State of New Jersey, Bergen County, to have a portion of the arrearages in the amount of $16,062.50 placed in trust for his eldest daughter, Gail Marcy Cohen. On October 28, 1970, the court so ordered, and in addition ordered the balance of the arrearages $27,140.00 be paid to petitioner and that he receive a credit in the amount of $16,062.50 against the arrearages. Petitioner received payments of $14,500.00 in 1970, $41,903.00 in 1971 and $13,000.00 in 1972, of which sums $43,202.50 represented a judgment for arrearages accrued during the period in which petitioner's former husband made no such payments.
Petitioners did not include any of the amounts received from the former husband in her gross income on their joint Federal income tax returns for any of the years in issue. For the reasons stated in the companion case of Cohen v. Commissioner,T.C. Memo 1977-383, this Court has determined that the amounts received by petitioner for the period subsequent to September 17, 1967, are not includable in petitioner's gross income under the provisions of section 71. As to the amounts paid *64 for the period prior to September 17, 1967, they are properly includable in petitioner's gross income under the provisions of section 71. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩